IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Len Godwin, ) | C/A NO. 3:15-1493-CMC |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| Tween Brands, Inc., and AlliedBarton ) | |
| Security Services, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Plaintiff's second amended complaint alleging violation of 42 U.S.C. § 1981 and state law causes of action. Plaintiff seeks injunctive relief and monetary damages. Defendants Tween Brands, Inc. ("Tween") and AlliedBarton Security Services, LLC ("AlliedBarton") each seek dismissal of this action under Rule 12(b)(6). *See* ECF Nos. 16 & 23. Plaintiff has responded in opposition to Defendants' motions, and the matter is ripe for resolution.

**I. STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein. *Id.* The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6). *Id.*

1

Moreover, to survive such a motion, a complaint must state a "plausible claim for relief." *Id.* The determination whether a complaint adequately states a plausible claim is a "context-specific task," *id.* at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is "probable," the complaint must advance the plaintiff's claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015) (internal quotation marks and citations omitted) (same).

## II. BACKGROUND

On July 11, 2014, Plaintiff, an African-American male, entered a clothing store called "Justice" located at the Village at Sandhill shopping center in Columbia, South Carolina. *See* Second Am. Compl. ("Complaint") at ¶¶ 10, 12, 28, 29, ECF No. 10. Plaintiff was wearing baggy pants and a backwards-facing baseball cap. *Id.* at ¶ 29. Plaintiff shopped for some period of time and noticed he was being watched by a female AlliedBarton security guard, who spoke with someone on her walkie-talkie and was then joined by a male AlliedBarton security guard. *Id.* at ¶¶ 11, 13, 14. Plaintiff took items that he wished to purchase to the register as there were no shopping carts. *Id.* at ¶ 17. As Plaintiff continued to shop, the security guard (the Complaint does not specify which one) continued to watch him. *Id.* Plaintiff was approached by a store manager, who asked if Plaintiff needed assistance shopping, which Plaintiff declined. *Id.* at 18-19. The store manager then told Plaintiff he needed to leave the store. *Id.* at 20. Plaintiff was told "he had been shopping too long." *Id.* at 21. Plaintiff purchased some items and proceeded to leave the store. *Id.* at ¶ 25, 32.

As the Plaintiff approached the exit, the male AlliedBarton security guard continued to watch him, so Plaintiff asked the security guard why he was being watched. *Id.* at ¶ 26–27. The security guard responded that he was just doing his job and said, "You know what this is all about . . . PBS . . . profiling black while shopping." *Id.* at ¶ 28. Plaintiff then confronted the store manager and security guard, neither of whom denied that he was racially profiled nor could they provide a non-discriminatory basis for the profiling. *Id.* at ¶¶ 36–37. After Plaintiff made his purchases and departed the store, he decided to return the purchased items "due to the treatment he received." *Id.* at 32. The store manager did not question why Plaintiff was returning the items, even though Plaintiff "had purchased the items only minutes before . . . ." *Id.* at 34. There is no allegation in the Complaint that Plaintiff did not receive a full refund for the items he purchased.

Plaintiff filed suit in this court, alleging violation of 42 U.S.C. § 1981, violation of S.C. Code Ann. § 45-9-10, *et seq.*, intentional infliction of emotional distress, and negligence. Plaintiff alleges that as a result of these acts or omissions, he has suffered a variety of physical and mental problems and lost employment opportunity.

### III. Discussion

#### A. Federal Law Claim – 42 U.S.C. § 1981

Plaintiff alleges that Defendants, by and through their agents, "engaged in conduct intended to interfere, and which did so interfere, with Plaintiff's ability to make such contracts [for the purchase of goods] on the basis of Plaintiff's race." Compl. at ¶ 43. Defendant Tween maintains that Plaintiff has failed to identify a transaction that it (Tween) prevented. M. to Dism. at 2-4, ECF No. 23. Defendant AlliedBarton argues that simple monitoring of a retail shopper fails to provide

basis for a complaint under § 1981, and that it (AlliedBarton) did not thwart or deny Plaintiff's ability to make his purchases or (ultimately) return his purchases. Memo. in Supp. of M. to Dism. at 3-8, ECF No. 16-1. Plaintiff argues in reply that the court should apply a test adopted by the Sixth Circuit in *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001), to deny Defendants' motions, or in the alternative, that Plaintiff has set forth sufficient factual allegations to survive the dismissal motions. *See* Resp. in Opp. at 7, ECF No. 26.

Section 1981 provides that "[a]ll persons ... have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "Make and enforce contracts" includes "the making, performance, modification, and termination of contracts . . . ." *Id.* § 1981(b). To prove a § 1981 claim in the retail establish context, Plaintiff must ultimately establish both that Defendants "intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).[1] While § 1981 prohibits racial discrimination in "all phases and incidents" of a contractual relationship, *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994), the statute does not impose

---

[1]When a plaintiff cannot introduce direct evidence that his rights were denied by intentional discrimination, he must proffer circumstantial evidence to satisfy the *McDonnell Douglas* analytical framework. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004) (to establish *prima facie* case of discrimination under § 1981, plaintiff must establish that: "(1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers."). In this case, Plaintiff alleges, and Defendants do not deny, for purposes of these motions, direct evidence of discrimination. Plaintiff also argues that the Fourth Circuit has not "addressed the standard for § 1981 cases involving direct-evidence . . . ." Resp. in Opp. at 6, ECF No. 26. This is incorrect. *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427 (4th Cir. 2006).

a general prohibition against race discrimination or provide a private right of action for perceived race discrimination of any kind in the retail context. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006) ("[N]othing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice."); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (same).

Plaintiff offers no allegations that he was denied the ability to purchase the items he had taken to the register for purchase, or that there were items he intended to purchase but did not because of Defendants' alleged actions. Moreover, as noted by Defendant AlliedBarton, Defendant was not only able to purchase all the items he intended to purchase, but he also was able to return the same items a short time later, and was therefore "able to contract with the store not once, but twice." Mem. Supp. of Mot. to Dism at 8, ECF No. 16-1.

Plaintiff's assertion that the court should apply the test adopted by the Sixth Circuit in *Christian* is rejected. Plaintiff presents allegations of direct evidence of discriminatory acts – "profiling black while shopping[,]" Compl. at ¶ 28, and that neither the store manager nor security guard denied that he was racially profiled nor could they provide a non-discriminatory basis for the profiling. The *Christian* test, to the extent persuasive in this Circuit, applies to the establishment of a *prima facie* case of discrimination where Plaintiff proceeds via the presentation of circumstantial evidence of racial discrimination in a § 1981 case. Once a *prima facie* case is established, a court proceeds to apply the familiar *McDonnell-Douglas*[2] burden shifting framework to determine whether a triable issue of material fact exists. Plaintiff presents direct evidence of alleged racial

---

[2]*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

discrimination; therefore, the establishment of a *prima facie* case and the application of the burden-shifting framework are inapplicable to this matter.

Plaintiff has failed to allege that he was prevented from making or enforcing a contract with Defendant Tween, or that he was denied "all benefits, privileges, terms, and conditions of the contractual relationship." 41 U.S.C. § 1981(b). Accordingly, Defendants' motions are granted and Plaintiff's claim for relief under § 1981 is dismissed with prejudice.

### B. State Law Claims

It is this court's customary practice to decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed in advance of trial. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). As the Fourth Circuit explained in *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996), the decision to decline the exercise of supplemental jurisdiction after dismissal of the original jurisdiction claim will "hinge on the moment within the litigation when the dismissal of the touchstone claim takes place . . . ." (*quoting* 28 U.S.C. § 1367, practice commentary (West 1993)). Where the original jurisdiction claim is dismissed before trial, the state claims should be dismissed as well. *Gibbs*, 383 U.S. at 717; *Taylor*, 81 F.3d at 437. The court notes that 28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any [state law claim asserted under 1367(a)] . . . shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The constitutionality of this statute was upheld in *Jinks v. Richland County*, 538 U.S. 456 (2003).

Accordingly, the court declines to exercise jurisdiction over Plaintiff's state law claims, and they are dismissed without prejudice.

## IV. Conclusion

Defendants' motions to dismiss are granted. Plaintiff's complaint is dismissed with prejudice as to Plaintiff's federal cause of action. Plaintiff's second, third, and fourth causes of action are dismissed without prejudice.

**IT IS SO ORDERED**.

> s/ Cameron McGowan Currie
> CAMERON McGOWAN CURRIE
> SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 18, 2015